Arthur Greene, Executor of Last Will and Testament of Meyer Frank, Deceased, Appellee, v. Jennie Frank, Individually and as Widow of Meyer Frank, Deceased, et al., Appellees. Hannah Dembo and Rachel Rubinovitch, Appellants.

Gen. No. 42,820.

Opinion filed December 19, 1944.   Released for publication January 4, 1945.

WILLIAM W. BARRON, LEON L. DROLET and ARTHUR F. MANNING, all of Chicago, for appellants.

ROBERT L. HUTTNER, of Chicago, for certain appellee.

MEYER GOLDMAN, of Chicago, for certain other appellees.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Meyer Frank died testate March 5, 1942.  His will, which was executed by him July 8, 1941, was admitted to probate.  Arthur Greene, son-in-law of the testator, was named executor of his will, letters testamentary were issued to him as executor on April 23, 1942 and he qualified and acted as such.  The testator's estate consisted entirely of personal property of the gross value of $99,414.75.  His will provided for 15 bequests, 14 of which were to members of his immediate family and close relatives.  His widow, Jennie Frank, was made sole residuary legatee.  The surviving heirs-at-

law and next of kin of the testator were his widow, Jennie Frank, and his children, William B. Frank, Blanche Greene and Gladys Rosenblum. He also left surviving him two sisters, Hannah Dembo and Rachel Rubinovitch, who were between 76 and 80 years old and lived in Latvia and Lithuania respectively. During his lifetime the decedent provided for his sisters from time to time. He made his last remittances of moneys to them during June 1940. Thereafter he neither made nor attempted to make any remittances to them because he had been informed that there would be no likelihood that any money sent to his sisters would reach them. On July 10, 1940 the President of the United States issued an executive order prohibiting the payment of money or delivery of property to nationals of Latvia and Lithuania except under license of the secretary of the treasury.

On August 6, 1941 a general order was entered by the probate court, which, after taking judicial notice of certain applicable Federal statutes, executive orders of the President of the United States and regulations issued pursuant to such executive orders and reciting that "payments of money or delivery of property under the jurisdiction of this court cannot now be made to nationals" of numerous European countries, including Latvia and Lithuania, directed that executors and others subject to the jurisdiction of that court having in their possession money or property belonging to a national of any of said countries as legatee or otherwise, file an appropriate petition to the end that such money or property be deposited with the county treasurer subject to the further order of the court.

Paragraph Seventh of the will of Meyer Frank provides:

"I hereby give and bequeath unto my beloved sister, Hannah Dembo, the sum of Fifteen Hundred Dollars ($1,500.00), and to my beloved sister, Rachel Rubinovitch, the sum of Fifteen Hundred Dollars ($1,500.00).

If my said sisters, or either of them, shall die before me, or if my Executor shall be unable to pay said legacies to my sisters, or either of them, on account of prevailing war conditions in Europe or for any other cause, then such legacy or legacies shall lapse and fall into and become a part of my residuary estate."

On July 6, 1942 the President of the United States issued an order establishing the office of alien property custodian and in compliance with regulations issued by said alien property custodian the executor filed with him a report setting forth the names and last known places of residence of Hannah Dembo and Rachel Rubinovitch and the nature of their interests under the will and in the estate of the testator. The alien property custodian claims no interest in the estate and is not a party to this litigation but he designated attorneys to represent the interests of Hannah Dembo and Rachel Rubinovitch under the will of the decedent. Said attorneys filed the appearances of Hannah Dembo and Rachel Rubinovitch and themselves in the probate court and filed a petition therein praying that pursuant to the general order of that court heretofore referred to the executor be directed to deposit with the county treasurer the legacies of $1,500 each bequeathed to Hannah Dembo and Rachel Rubinovitch under Paragraph Seventh of the will. The executor advised the probate court that he was going to file a complaint for the construction of Meyer Frank's will and the petition of Hannah Dembo and Rachel Rubinovitch was continued generally.

The administration of the testator's estate having been completed except for the payment of the legacies provided for in Paragraph Seventh of the will, the executor filed his complaint on March 3, 1943 for the construction of the will and particularly Paragraph Seventh thereof, alleging therein the matters hereinbefore set forth and that "during the ten months' period fixed by law for the probate of the estate of

said deceased in the probate court of Cook county, Illinois, the plaintiff has been and is now unable to pay to said legatees, or either of them, the legacies of Fifteen Hundred Dollars ($1,500.00) each, bequeathed to said legatees under Paragraph Seventh of said will of said deceased, on account of prevailing war conditions in Europe, or for other cause." Hannah Dembo, Rachel Rubinovitch and the widow and children of the testator were named in the complaint as defendants and answers were filed by or on behalf of all of said defendants. It is admitted that not only was the executor unable to pay the legacies to the testator's sisters but that it was impossible for him to do so because of prevailing war conditions in Europe.

The trial court entered a decree which, after finding that "during the ten months' period fixed by law for the probate of the estate of the decedent the executor has been and is now unable to pay the legacies of $1,500 each to Hannah Dembo and Rachel Rubinovitch or either of them under Paragraph Seventh of the will and that during said period the proceeds of said legacies were not received by said Hannah Dembo and Rachel Rubinovitch or either of them on account of prevailing war conditions in Europe or for any other cause," adjudged that "by reason thereof and pursuant to the provisions and within the meaning of Paragraph Seventh of said will said legacies and each of them lapsed and fell into and became a part of the residuary estate of the testator" and directed the executor "to pay the sum of $3,000, representing the aggregate amount of said legacies, less the costs taxed by the court in this proceeding, to the defendant Jennie Frank, the widow and sole residuary legatee of the testator under Paragraph Fourteenth of said will."

This appeal is prosecuted on behalf of Hannah Dembo and Rachel Rubinovitch (hereinafter for convenience sometimes referred to as appellants) to reverse the decree and it is contended that the $1,500

bequeathed to each of them under Paragraph Seventh of the will "was vested in them" and should have been deposited by the executor with the county treasurer pursuant to the general order of the probate court and that a deposit of the amount of the legacies with the county treasurer in conformity with said general order would constitute payment to them as legatees.

In bequeathing the legacies in question to his sisters, the testator imposed two conditions which, if not fulfilled, would cause them to lapse and become a part of the residuary estate. The first condition was that the legacy to either sister "shall lapse" if she "shall die" before the decedent. Since the decree found that at the time of its entry both sisters were living, the first condition must be held to have been fulfilled. Therefore we are solely concerned with the proper construction to be given to the second condition, which provides that "if my executor shall be unable to pay said legacies to my sisters, or either of them, on account of prevailing war conditions in Europe or for any other cause, then such legacy or legacies shall lapse and fall into and become a part of my residuary estate."

In construing wills the fundamental rule is to ascertain and give effect to the true intention of the testator and in ascertaining his intention the words of his will are to be read in the light of the circumstances under which he executed it.

The general order of the probate court, according to its terms could apply here only if the legacies in question vested in the testator's sisters. Therefore the paramount question presented is whether under Paragraph Seventh of the will the legacies bequeathed to the sisters of the testator vested in them, or whether, within the meaning of the language therein expressed, said legacies lapsed and became a part of the residuary estate by reason of the inability of the executor on account of prevailing war conditions in Europe to pay

same to the decedent's sisters or either of them during the period fixed by law for the probate of the testator's estate.

As heretofore shown, the decedent provided for his aged sisters from time to time until June 1940, when he ascertained that there was, no likelihood that any more money sent by him would reach them. The executive order prohibiting the payment of money to nationals of Latvia and Lithuania was issued July 10, 1940. When Meyer Frank executed his will on July 8, 1941, he knew then that no money could be remitted to his sisters and he also knew then that it had been impossible for more than a year before that time to send them money. When he made his will, he must have contemplated that if war conditions prevailed at the time of his death and that if such war conditions continued to prevail for any considerable period after his death, there would be no possibility of the executor paying the legacies to his sisters or of them receiving them. It was unquestionably for that very reason that he made the legacies contingent upon the ability of the executor to pay them if the war in Europe continued for a long period of time after his death. The executor was unable to pay them because of prevailing war conditions in Europe within a reasonable time after the testator's death and we are of opinion that the chancellor properly held that the ten months' period fixed by law for the administration of testate estates was a reasonable time.

While it is true that the testator intended and undoubtedly cherished the hope that his sisters would receive the benefit of the legacies, it is also true that when he imposed the conditions upon which they would lapse, he realized that it might be impossible because of the war for the executor to pay the legacies so that they would actually reach his sisters. In that event it was clearly his intention that the amount of the legacies would be paid to his widow as sole residuary legatee.

If the legacies in question were unconditional, they would have vested in the appellants upon the testator's death and would be subject to deposit with the county treasurer under the terms of the general order of the probate court but, conditioned as they were and one of the conditions precedent not having been fulfilled, they must be held to have lapsed and become part of the residuary estate.

It is suggested that payment of the legacies to the county treasurer would constitute payment to the testator's sisters. As we have already said, it was unquestionably the intention of the testator that if the legacies could not be actually paid to his sisters, the aggregate amount thereof should be paid to his widow. It is clear that he did not intend that the money represented by these legacies should be paid to anyone other than his sisters or widow. A deposit of the amount of the legacies with the county treasurer would preclude the testator's widow from ever receiving same and in all probability his sisters would never receive any benefit from the legacies. Hannah Dembo and Rachel Rubinovitch were about 80 years old, had no life expectancy and had been already subjected to the rigors of war for a number of years prior to the entry of the decree on April 7, 1943, and, while it was found therein that they were living at that time, it may well be that they have since died or will have died before the war is over in Europe and orderly governments have been re-established in Latvia and Lithuania. The testator had the right to dispose of his property as he saw fit so long as the provisions of his will violate no rule of law and are not against public policy. It is certain that he did not contemplate a situation whereby it might become possible that that portion of his property represented by these legacies would be distributed among the heirs-at-law or next of kin of Hannah Dembo and Rachel Rubinovitch in Latvia, Lithuania or elsewhere. We think that it would frustrate the intention of the testator as manifested in his will if

the aggregate amount of these lapsed legacies was not paid to his widow as sole residuary legatee.

In our opinion the only reasonable construction that Paragraph Seventh of the will is susceptible of, considered with all other pertinent provisions of the will and the circumstances under which it was executed, is that the testator clearly intended that if the executor was unable to pay the legacies to his sisters, Hannah Dembo and Rachel Rubinovitch, and they were unable to receive them because of prevailing war conditions in Europe, they lapsed and were payable to Jennie Frank, decedent's widow and the sole residuary legatee. We are impelled to hold that the general order of the probate court has no application to these lapsed legacies.

For the reasons stated herein the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

FRIEND and SCANLAN, JJ., concur.